UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 08-16-DCR

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS:                        RECOMMENDED DISPOSITION OF
                                 MOTION TO SUPPRESS

CINDY SAYLOR                                                                DEFENDANT

\* \* \* \* \*

The Court considers a motion to suppress filed by Defendant Cindy Saylor, on referral from the District Judge. *See* DE #23; *see also* DE #24 (Response). Saylor alleges that police improperly interrogated her after she invoked both her right to remain silent and right to counsel. The Court conducted an evidentiary hearing on April 18, 2008. *See* DE #26; *see also* DE #37 (hereinafter "Hearing").

Two Rivers TFO Eric Caldwell, who interviewed Defendant, testified. Based on a motion and proffer by defense counsel, the Court continued the hearing to April 22, 2008, providing Defendant an opportunity to secure and present a witness. *See* DE #26; Hearing at 21-23. However, defense counsel announced after the continuance that Defendant would not produce additional testimony or evidence. *See* DE #31. The matter thus stands submitted on the April 18 hearing record. Having considered the record and applicable legal standards, the Court recommends that the District Court DENY the motion to suppress.

**I. Background**

Authorities traveled to Cindy Saylor's residence on December 9, 2004 to execute a state search warrant. *See* Hearing at 9, 18. According to Defendant's suppression motion, police provided *Miranda* warnings "shortly" after they arrived and immediately began questioning Saylor. *See* DE #23-2 at 1 (hereinafter "Supporting Memo"). The record reflects that Saylor signed a written "waiver of rights" form. *See* DE #24-2; *see also* Hearing at 10-11 & Exhibit 1. Notably, Saylor does not dispute the validity of the waiver; nor does she assert that police asked any questions before she executed the document. Instead, the suppression motion alleges:

> In the instant case, the defendant was read her *Miranda* rights shortly after police arrived at her home to execute a search warrant. Immediately thereafter, police began to question her about drugs, and the activities of both her and the co-defendant, Willard Saylor. The defendant stated, unequivocally, that she did not want to talk to police without an attorney being present. Despite having unequivocally invoked her right to remain silent and her right to counsel, the police continued to question her. In fact, the defendant invoked her rights to remain silent and to counsel several more times while police were there, but to no avail. Furthermore, all of this questioning occurred over a span of a few hours and any alleged statements made by the defendant were made after numerous requests for counsel. At no point did the defendant initiate any conversation regarding the case with police.

*See* Supporting Memo at 4. Despite the hearing continuance, the defense provided no evidence to support the motion's description.

Eric Caldwell was the lead investigator and interviewed Defendant. He testified at the April 18, 2008 evidentiary hearing and was the only witness. Caldwell explained:

> [A]fter arriving at the residence, we secured the residence and read the search warrant to Ms. Saylor. After having the residence secured and reading the search warrant, at that time, myself and Special Agent Michael Harrison, read Ms. Saylor her *Miranda* warnings.

*See* Hearing at 9-10.  Saylor signed a written waiver form and initialed the form beside each specific *Miranda* warning.  *See id.* at 10-11; Exhibit 1; *see also* DE #24-2.  According to the document, Saylor executed the *Miranda* waiver at 11:40 a.m.[1]  *See id.*; *see also* Hearing at 12, 14.  Afterwards, the officers interviewed Defendant and obtained a statement.[2]  *See id.* at 11-12, 15; *see also* DE #24-2.  The record shows that the interview started at 11:50 a.m. and ended at 1:35 p.m.  *See id.*; *see also* Hearing at 12-13, 17-18.

Defense counsel expected Defendant's sister to testify and dispute Officer Caldwell's version of events, but the sister could not attend the hearing on April 18.  Counsel therefore moved to continue the matter.  *See id.* at 21.  To support the request, defense counsel proffered to the Court the sister's anticipated testimony:

> [A]ccording to Ms. Saylor's sister, she arrived at the home shortly after I believe the officers did, and was there sitting next to Ms. Saylor when she was read her rights and they started to ask her questions, and she, Ms. Saylor made a statement to the effect of, I know I'm supposed to have a lawyer before I talk to you.  She would testify, I believe, that Ms. Saylor made such a comment several times in the course of being questioned and that during the time that she was there, that she never saw her sign anything.

*Id.*

---

[1] Caldwell testified that the officers arrived at the residence only a "few minutes prior to 11:40."  *See* Hearing at 14.  He stated that Saylor initialed and signed the waiver form "immediately" following the *Miranda* warning.  *See id.* at 15.  According to Officer Caldwell, Salyor's *Miranda* waiver was voluntary and knowing.  *See id.* at 11, 13.  He reported that Saylor never expressed "any hesitation," and she never "asked for," or even mentioned "the word," attorney.  *See id.* at 11.

[2] Caldwell explained that Agent Harrison actually wrote the statement, which was then "read back" to Saylor.  *See* Hearing at 17.  Saylor initialed any changes and signed each page of the statement.  *See id.*  Indeed, Saylor did make various interlineated changes to the statement.  *See id.;* *see also* Exhibit 1 & DE #242.

3

Caldwell in fact confirmed, under oath, that Defendant's sister was at the residence that day, but he insisted that the sister was not present during the interview. *See id*. at 13, 15-18. According to Caldwell, Defendant Saylor was the "only non-law enforcement person present" when the officers arrived, and he testified that no one else visited the residence while police provided *Miranda* warnings, obtained the waiver, conducted the interrogation, and secured the statement. *See id*. at 9, 13. Instead, Caldwell reported that the sister arrived "later" that day during the "evening." *See id*. at 15. He did not know exactly when the sister arrived, but he was "sure" that it would have been after Defendant's statement to police. Caldwell explained that he would have "seen" or "heard" anyone that visited the home during questioning because the officers interrogated Saylor in the "living room area right there as soon as you step in the [front] door." *See id*. at 16-17, 19-20. The police did not interview Defendant's sister, and Caldwell stated that the sister was there only "for a few minutes." *See id*. at 16-17.

Based on the potential conflict between Officer Caldwell's testimony and the suggested defense witness, as proffered by counsel, the Court continued the hearing. *See id*. at 23. On April 22, 2008, defense counsel declined to offer additional evidence. Both parties elected to stand on the record. *See* DE #31.

## II. Analysis

In *Miranda v. Arizona*, 86 S.Ct. 1602 (1966), the Supreme Court determined that the Fifth Amendment prohibition against compelled self-incrimination extends to custodial police interrogation.[3] As such, police must advise a suspect, before custodial interrogation, of the right to

---

[3] Whether *Miranda* applies – *i.e.*, whether police subjected a defendant to custodial interrogation – is a substantial threshold question on which a defendant has the burden. *See United States v. Lawrence*, 1989 WL 153161, at *5 (6th Cir. Dec. 18, 1989); *see also United States v.*

remain silent and the right to counsel. *See id.* at 1624-26. Once advised, a suspect may waive those rights, provided the waiver "is made voluntarily, knowingly, and intelligently." *See id.* at 1612. It is the Government's burden to establish valid *Miranda* waiver by a preponderance of the evidence. *See United States v. Nichols*, 512 F.3d 789, 798 (6th Cir. 2008).

In this case, the record undoubtedly establishes that Saylor received proper *Miranda* warnings prior to the interview. Saylor executed a written *Miranda* waiver/advice form and also initialed the waiver form beside each specific sub-warning. *See* DE #24-2. Moreover, Officer Caldwell credibly testified that police read the waiver form to Saylor before she initialed and signed the document. *See* Hearing at 10-11. Defense counsel proffered that Defendant's sister "was there sitting next to Ms. Saylor when she was read her rights," but "never saw [Saylor] sign anything." *See id.* at 21. Besides the proffer, which is not evidentiary, Defendant does not contest the validity of Saylor's *Miranda* waiver. On these facts, the Court finds that Saylor "voluntarily, knowingly, and intelligently" waived her rights. *See Miranda*, 86 S.Ct. at 1612; *Nichols*, 512 F.3d at 798.

Saylor's motion primarily alleges not a failure to provide warnings but that she invoked both her right to remain silent and right to counsel during the interrogation. *See* Supporting Memo at 1, 4. In addition, according to defense counsel's proffer, Defendant's sister was next to Defendant when the interview started and purportedly heard Saylor tell police, to the effect, "I know I'm supposed to have a lawyer before I talk to you." *See* Hearing at 21. Saylor allegedly made the comment "several times in the course of being questioned." *See id.*

---

*Donaldson*, 493 F. Supp.2d 998, 1003 (S.D. Ohio 2006). The parties here apparently agree that the circumstances required the *Miranda* warning. The Court will proceed on that assumption, because the hearing record did not address the matter.

According to *Miranda*: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *See Miranda*, 86 S.Ct. at 1627. The right, if invoked, must be "scrupulously honored," but does not require "a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject." *See Michigan v. Mosley*, 96 S.Ct. 321, 326-27 (1975)(validating interview where police "immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation").

If a suspect exercises the right to counsel, *Miranda* holds that "the interrogation must cease until an attorney is present." *See Miranda*, 86 S.Ct. at 1627. The Supreme Court elaborated in *Edwards v. Arizona*, 101 S.Ct. 1880 (1981):

> We further hold that an accused, such as Edwards, having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*See id.* at 1885.

Here, Officer Caldwell denied that Saylor in any way requested an attorney. *See* Hearing at 11. In fact, Caldwell testified that Defendant never even mentioned "the word" "attorney," "counsel," or "lawyer" at any time during the interview. *See id.* Furthermore, the record shows that Saylor "freely and voluntarily" provided a statement to authorities. *See* DE #24-2, Exhibit 1. Neither Caldwell's testimony or defense counsel's proffer legitimately suggests that Saylor objected to the police questioning and invoked her right to counsel. *See* Hearing at 21. The lone evidence before the Court is the signed advice/waiver and Caldwell's detailed and unrefuted testimony.

6

Considering the record, the Court has no basis to doubt Officer Caldwell's testimony, which was clear, credible, and uncontroverted by competent proof. As such, the Court rejects the allegations in Defendant's suppression motion and defense counsel's proffer. Because the record establishes that Saylor validly received advice of and waived her *Miranda* rights, and because the facts show that Saylor never thereafter exercised her right to counsel[4] or right to remain silent, the Court finds that law enforcement in this case did not violate *Miranda*. The Court therefore recommends that the District Court DENY in its entirety Saylor's motion to suppress.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Rule 59(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. The parties should consult said statute and rule for applicable appeal rights and mechanics.

This the 28th day of April, 2008.



Signed By:
Robert E. Wier
United States Magistrate Judge

G:\01-Clerk\Suppression\08-16 C Saylor.wpd

---

[4] Whether the proffered ambiguous reference to an attorney – if actually proven – would have invoked the right to silence or counsel is far from clear. *See Davis v. United States*, 114 S.Ct. 2350, 2355-57 (1994)("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning."). Again, with no competent proof on the question, the Court does not specifically explore that sub-issue.